IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ESSIE BENNETT, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 2:12-CV-01758-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of } | |
| Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Essie Bennett brings this action pursuant to Titles II and XVI of Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff previously filed for disability, DIB and SSI under Titles II and XVI of the Act alleging disability beginning on February 1, 2007. (R. 10). Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") Jack F. Ostrander on April 20, 2009. (R. 79-105). The Appeals Council affirmed the ALJ's decision to deny Plaintiff's claims on December 18, 2009. (R. 10). Plaintiff reapplied for disability, DIB, and SSI under Titles II and XVI of the Act on January 22, 2010, also alleging that disability began on February 1, 2007. (R. 106-07). Plaintiff's 2010 applications were initially denied by the Social Security Administration on

March 10, 2010. (R. 109-19). Plaintiff then requested and received a hearing before ALJ Michael L. Brownfield on May 3, 2011. (R 25-47). In his decision dated July 27, 2011, the ALJ stated that res judicata applied to the time period between February 1, 2007 and July 6, 2009 because no new and material evidence relating to that time period was presented in Plaintiff's current applications. (R. 10). As a result, the ALJ only evaluated evidence dated after July 6, 2009. (*Id*.). The ALJ determined that Plaintiff had not been under a disability within the meaning of Sections 216(i) and 223(d) of the Act. (R. 17). The Appeals Council denied Plaintiff's request for review on March 23, 2012; consequently, the ALJ's decision became the final decision of the Commissioner. (R. 1). Plaintiff has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, this court affirms the decision of the Commissioner.

At the time of her hearing, Plaintiff was forty-four years old, had completed the tenth grade, and had not obtained her GED. (R. 56, 58). Plaintiff previously worked as a barbeque cook and occasional server. (R. 73). Plaintiff alleges disability because of pain, swelling, and stiffness in her arms, legs, and hands. (R. 63).

During her alleged period of disability, Plaintiff primarily received treatment for pain, swelling, and stiffness in her legs from Dr. Joseph Blankson. (R. 236-43, 395-421, 462-77, 515-26). Dr. Blankson diagnosed Plaintiff with benign essential hypertension, thrombophlebitis of the right popliteal vein, hyperlipidemia, morbid obesity, dependent edema due to inactivity, chronic anticoagulant use, acquired coagulation factor deficiency, adjustment disorder with disturbance of emotions/depressed mood, and primary insomnia. (R. 238, 411, 414, 470, 521, 524). Despite these diagnoses, Dr. Blankson repeatedly stated that Plaintiff did not have neurological or

psychological problems. (R. 237, 396-97, 403-04, 413). Dr. Blankson attributed Plaintiff's difficulties to her obesity and encouraged her to diet and exercise. (R. 238, 396-97, 470, 521-22).

On November 13, 2009, Dr. Michael Crain treated Plaintiff in the Princeton Emergency Room for pain and diagnosed Plaintiff with posterior tibial and popliteal Deep Vein Thrombosis (DVT) in the right leg. (R. 312). Dr. Crain indicated that he treated Plaintiff with Coumadin and subcutaneous therapeutic Arixtra and that Plaintiff was pain free at discharge on November 14, 2009. (*Id.*).

On July 9, 2010, Dr. Blankson treated Plaintiff for dizziness and weakness. (R. 399-401). Dr. Blankson noted that Plaintiff had lost 10 pounds in 2.5 weeks and determined that her rapid weight loss caused her dizziness and weakness. (*Id.*). He advised Plaintiff to slow down her weight-loss. (*Id.*).

Plaintiff fractured her right ankle on August 7, 2010 when she fell down stairs at her home. (R. 542). Dr. Jeremy Rogers treated Plaintiff at Princeton Emergency Room and placed her in a Sugar-tong splint. (R. 370-80, 542). On August 11, 2010, Dr. Edward Bromberg reported that Plaintiff was using crutches and doing some weight-bearing on her right ankle. (*Id.*). On October 29, 2010, Dr. Bromberg stated that Plaintiff was bearing full weight on her ankle without an aid; had mild, chronic swelling; was able to get on her toes; and had difficulty toe walking. (R. 546).

On October 6, 2010, Dr. Blankson reported that Plaintiff was taking Furosemide, Coumadin, Flexeril, Ferrous sulfate, Trazodone, Zocor, Norvasc, Hydrochlorothiazide-lisinopril, and Citalopram. (R. 471). Dr. Blankson indicated that he counseled Plaintiff about dieting and using her medications and prescribed Furosemide, Citalopram, Coumadin, Ferrous sulfate, Flexeril, Hydrochlorothiazide-lisinopril, Norvasc, Trazodone, and Zocor. (R. 470).

On January 4, 2011, Dr. Blankson noted that Plaintiff had chronic anticoagulant use, benign essential hypertension, dependent edema due to inactivity, esophageal reflux, hyperlipidemia, morbid obesity, primary insomnia, and adjustment disorder with disturbance of emotions, but a normal pre-employment screening examination. (R. 521). Additionally, on March 28, 2011, Dr. Arthur James interpreted a venous Doppler of Plaintiff's right leg and determined that no evidence of DVT existed. (R. 502).

## II.     ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If a claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the

claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In his July 27, 2011 decision, the ALJ determined that res judicata applied to the time period between February 1, 2007 and July 6, 2009 because no new and material evidence relating to that time period was presented in Plaintiff's current applications for disability. (R. 10). Thus, the ALJ only evaluated whether Plaintiff had been under a disability since July 6, 2009. (*Id.*).

The ALJ concluded that Plaintiff met the insured status requirements of the Act through June 30, 2012 and had not engaged in substantial gainful activity since February 1, 2007. (R. 12). After reviewing the record and the previous ALJ's decision, the ALJ determined that Plaintiff suffered from the severe impairments of obesity, hypertension, and DVT of her right leg. (R. 13). The ALJ explained that these impairments were severe because they caused more than minimal limitations to Plaintiff's ability to perform the full range of exertional activity and have lasted for at least twelve months. (*Id.*). The ALJ also noted that Plaintiff had some history of gout and a

right ankle fracture, but concluded that they were not severe impairments. (*Id.*). The ALJ explained that Plaintiff's gout was not severe because Plaintiff never received treatment for it, and the record did not contain any indications that Plaintiff's gout caused a significant, persistent limitation. (*Id.*). The ALJ explained that Plaintiff's ankle was not a severe impairment because on October 29, 2010, Dr. Bromberg stated that Plaintiff could bear her full weight on the ankle without an aid. (*Id.*).

The ALJ then determined that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*). The ALJ explained that no treating or examining physician opined that Plaintiff's impairments, singly or combined, medically equaled a listed impairment. (*Id.*).

The ALJ concluded that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except Plaintiff needs a sit/stand option. *Id.* The ALJ stated that Plaintiff can occasionally balance, stoop, kneel, crouch, crawl and climb stairs but cannot work around unprotected heights, dangerous equipment or climb ladders, ropes, or scaffolds. (R. 13-14).

In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's subjective allegations of pain and other symptoms using the Eleventh Circuit pain standard. (R. 14). The ALJ noted that Plaintiff reported at the hearing that "she had swelling and stiffness in her hands, arms, and legs;" experienced pain in her arms and legs; her treatment medication caused drowsiness; and that changes in her medication caused light headedness. (*Id.*). The ALJ concluded that the evidence did not satisfy Social Security Regulations 20 C.F.R. §§ 404.1529(c), 416.929(c), SSR 96-7p, and the Eleventh Circuit pain standard because the evidence did not establish that Plaintiff

had an underlying medical condition that was of such severity that it would reasonably give rise to the alleged symptoms. (R. 15).

The ALJ further explained that Plaintiff's ankle condition had healed. Plaintiff's treating physician, Dr. Blankson, repeatedly noted that Plaintiff's physical examinations were normal and her physical difficulties were a result of her obesity and inactivity. (*Id.*). The ALJ also noted that Plaintiff's prescribed treatment medication effectively controlled her DVT and that a venous Doppler study performed on March 28, 2011 revealed no evidence of DVT in Plaintiff's right leg. (*Id.*). The ALJ stated that Plaintiff's obesity clearly affected her other impairments and her ability to perform some of the physical requirements of work but that no evidence existed that her obesity precluded her from performing work at the sedentary level of exertion, which would minimize the effect of her obesity and other impairments on her lower extremities and body systems. (*Id.*). The ALJ also noted that Dr. Blankson repeatedly advised Plaintiff to exercise and monitor her diet, which she "appear[ed] not to follow." (*Id.*). The ALJ also determined that Plaintiff's medications effectively control the severity of her symptoms. (*Id.*).

Based on these observations and the testimony of a Vocational Expert, the ALJ determined that Plaintiff is unable to perform any past relevant work, was thirty-nine years old on the alleged disability onset date, has a limited education, and is able to communicate in English. (R. 16). The ALJ also determined that given Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act since February 1, 2007. (R. 17).

### III. Plaintiff's Argument for Reversal

Plaintiff argues the ALJ's decision should be reversed on three grounds. First, Plaintiff contends that the ALJ's decision should be reversed because the ALJ did not follow the slight abnormality standard according to SSR 96-3p when he determined that her adjustment disorder with depressed mood and insomnia were not severe impairments. (Pl.'s Br. 5). Second, Plaintiff contends that the ALJ did not properly develop the record because he did not consider her testimony regarding the side effects of her medication. (Pl.'s Br. 6). Third, Plaintiff posits that the ALJ's decision should be reversed because the ALJ's RFC assessment is not supported by a physician's RFC assessment. *Id*.

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other

citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

    **A.    The ALJ Did Not Commit Reversible Error When He Determined That Plaintiff's Adjustment Disorder with Depressed Mood and Insomnia Were Not Severe Impairments.**

Plaintiff argues that the ALJ committed reversible error when he determined that her adjustment disorder with depressed mood and insomnia were not severe impairments. However, the Eleventh Circuit has determined that "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe" and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 824-25 (11th Cir. 2010). Here, the ALJ determined that Plaintiff had the severe impairments of obesity, hypertension, and deep venous thrombosis of the right leg. (R. 13). Because the ALJ identified some severe impairments, he did not commit reversible error by determining that Plaintiff's adjustment disorder and insomnia were not severe impairments.

Moreover, Plaintiff has not met her burden of proving that her adjustment disorder with depressed mood and insomnia are severe impairments because she has not produced any objective medical evidence demonstrating that either her adjustment disorder or her insomnia affects her ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (finding that it is the plaintiff's burden to prove disability). Although Plaintiff produced doctors'

9

reports indicating that she was diagnosed with adjustment disorder and insomnia, none of the reports indicate the severity of her problems or mention any limitations on her abilities. (R. 238, 400, 404, 411, 414, 470, 521). Because Plaintiff did not produce any evidence indicating that either her adjustment disorder or her insomnia are severe or affects her ability to work, the ALJ properly determined that Plaintiff's adjustment disorder and insomnia are not severe impairments.

### B. The ALJ Properly Developed the Record and Considered the Side Effects of Plaintiff's Medications.

Plaintiff also argues that the ALJ did not properly consider the side effects of her medications. However, the ALJ did properly consider the side effects of Plaintiff's medications because he evaluated Plaintiff's testimony and the objective medical evidence in the record.

When the ALJ made his determination, he noted that Plaintiff testified that her medications made her drowsy. (R. 14). However, he also found that the majority of Plaintiff's medical records were normal and that Dr. Blankson determined that Plaintiff's difficulties "were a result of her obesity and inactivity." (R. 15).

Additionally, no objective medical evidence exists to support Plaintiff's claim that she suffered the alleged side effects or that the alleged side effects were caused by her medications. Although the ALJ has an obligation to develop the record, Plaintiff has the burden of proving disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Walker v. Comm'r of Soc. Sec.*, 404 Fed. Appx. 362, 366 (11th Cir. 2010). Plaintiff has the burden of submitting evidence to support her claim that the side effects of her medication make her unable to work. *Ellison*, 355 F.3d at 1276; *Walker*, 404 Fed. Appx. at 366. For example, in *Cherry v. Heckler*, the plaintiff "was represented at the hearing and did not allege that side effects of drugs contributed to her disability. Moreover, the only indication in the record of side effects is her statement before the

10

ALJ that her medication made her drowsy." 760 F.2d 1186, 1191 n.7 (11th Cir. 1985). There, the court determined that "the ALJ's failure to inquire further into possible side effects did not deprive [the plaintiff] of a meaningful opportunity to be heard." *Id*. Here, Plaintiff only mentioned that she suffered side effects from her medications at the hearing. Plaintiff never reported side effects to her doctors, and her doctors never indicated that she suffered from the side effects of her medications. July 9, 2010 is the only time Plaintiff reported feeling dizzy and weak to her doctors. (R. 399-401). Based on his observations that day, Dr. Blankson concluded that Plaintiff's rapid weight loss caused her dizziness and weakness, not her medications. (*Id*.) No other medical records report Plaintiff suffering from dizziness, weakness, fatigue, or drowsiness.

### C. Substantial Evidence Supports the ALJ's RFC Assessment.

Finally, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because no medical source conducted an RFC assessment. However, it is the ALJ's responsibility to determine Plaintiff's RFC; thus, no physician is required to make an RFC assessment. 20 C.F.R. § 404.1546(c). Although a claimant may provide a statement *containing* a physician's opinion of their remaining capabilities, the ALJ will evaluate the statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R. §§ 404.1513, 404.1527, 404.1545, *Green v. SSA*, 223 Fed. Appx. 915, 923 (11th Cir. 2007). The "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Here, the ALJ based his evaluation of Plaintiff's RFC on substantial evidence. The ALJ evaluated Plaintiff's testimony and medical records before determining that Plaintiff has the RFC to perform sedentary work with a sit/stand option and that Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs, but cannot work around unprotected heights, dangerous or moving equipment, and cannot climb ladders, ropes, or scaffolds. (R. 13-16). In particular, the ALJ noted that Dr. Blankson, the treating physician, repeatedly stated that Plaintiff's physical difficulties were a result of: her obesity and inactivity and encouraged her to exercise; Dr. Bromberg's conclusion that her ankle had healed; Dr. James's March 28, 2011 report indicating that no DVT was present; and that no treating or examining physician indicated any functional limitations for her. *Id.* Because it is the ALJ's duty to determine Plaintiff's RFC and substantial evidence supports the ALJ's RFC determination, the ALJ did not commit reversible error by determining Plaintiff's RFC without ordering a physician to perform an RFC assessment.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the ALJ properly applied the legal standards in reaching this determination. The Commissioner's final decision is therefore due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on August 16, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE